UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-21479

BRANDI YIP,
On behalf of herself and
all others similarly-situated

       Plaintiff(s),

v.

NMS MANAGEMENT SERVICES, INC.,
EXAMONE WORLD WIDE, INC.,
EXAMONE LLC,
QUEST DIAGNOSTICS INCORPORATED,
ELAINE TAULE, and
CHARLIE ALMERICO,

       Defendants.

_____/

## **COMPLAINT**

Plaintiff, Brandi Yip, by and through her undersigned counsel, sues Defendants, ExamOne World Wide, Inc., ExamOne LLC (collectively "ExamOne"), Quest Diagnostics Incorporated ("Quest"), NMS Management Services, Inc. ("NMS"), Elaine Taule ("Taule") and Charlie Almerico ("Almerico," and collectively with ExamOne, Quest, NMS, and Taule "Defendants"), and alleges as follows:

1

## NATURE OF THE ACTION

1.      Plaintiff was a Mobile Examiner jointly employed by Defendants. Plaintiff visited insurance customers at their homes or places of business on behalf of Defendants and conducted physical examinations and basic lab work for the purposes of insurance eligibility and underwriting. Plaintiff was primarily compensated on a per-appointment basis. Due to the duration of her appointments, the extensive amount of travel between appointments, and the additional lab work and paperwork she was required to conduct at home, Plaintiff's per hour compensation was often below the state and federal minimum wage, sometimes significantly so. Plaintiff routinely worked more than ten hours per day and more than 40 hours per week but did not receive any overtime compensation.

2.      Plaintiff alleges that Defendants regularly and routinely failed to pay her and the class of others similarly situated at least a minimum wage and failed to them overtime pay when working more than 40 hours in a workweek.

3.      Plaintiff further alleges that Defendants terminated her employment in retaliation for her joining a pending collective action lawsuit.

## PARTIES

4.      Plaintiff, Brandi Yip, is *sui juris* resident of the State of Florida who consents to participate in this lawsuit.

5.      Defendant, ExamOne World Wide, Inc., is a Pennsylvania corporation with its headquarters and principal base of business in Kansas.

6.      Upon information and belief, ExamOne World Wide, Inc. is licensed to and does in fact conduct business throughout the United States, including in Florida.

7.      Upon information and belief, ExamOne World Wide, Inc. is a wholly owned subsidiary of Quest Diagnostics Incorporated.

8.      Defendant, ExamOne LLC, is on information and belief a Delaware corporation.

9.      Upon information and belief, ExamOne LLC is a wholly owned subsidiary of ExamOne World Wide, Inc.

10.     Defendant, Quest Diagnostics Incorporated, is a Delaware corporation with its headquarters and principal place of business in New Jersey.

11.     Upon information and belief, Quest is licensed to and does in fact conduct business throughout the United States, including in Florida.

12.     Defendant, NMS Management Services, Inc., is a Florida Corporation with its headquarters and principal place of business located at 2901 South Congress Avenue, Palm Springs, Florida, 33461.

13.     Defendant, Elaine Taule, is a *sui juris* citizen of the State of Florida who resides at 403 Glenbrook Drive, Atlantis, Florida, 33462.

14.     At all times referenced herein, Taule was the President of NMS, and served as the branch manager for Quest and ExamOne.

15.     At all times referenced herein, Taule supervised and/or controlled the employment of Plaintiff with Defendants and acted directly or indirectly in the interest of NMS in relation to its employees, including its day to day operations and respective compensation practices; therefore, Taule is and was an employer within the meaning of 29 U.S.C. §203(d).

16.     Defendant, Charlie Almerico, is a citizen of the State of Florida with a principal place of business located at 6000 Cattleridge Drive, Suite 304, Sarasota, Florida, 34232.

17.     At all times referenced herein, Almerico was a "Field Leader" for ExamOne and Quest.

3

18.     At all times referenced herein, Almerico supervised and/or controlled the employment of Plaintiff with Defendants and acted directly or indirectly in the interest of ExamOne and Quest in relation to their employees, including their day to day operations and respective compensation practices; therefore, Almerico is and was an employer within the meaning of 29 § U.S.C. 203(d).

19.     The FLSA Collective Class Members are all current and former employees and/or independent contractors that worked for Defendants at any time during the three-year period before the filing of this Complaint to present as "Mobile Examiners" and were paid on a "per appointment" basis and less than the applicable minimum wage and/or were not paid overtime.

## PERSONAL JURISDICTION

20.     Defendants hire citizens of the state of Florida, contract with companies in Florida, and own or rent property in Florida. As such, the exercise of personal jurisdiction over Defendants comports with due process.

21.     Plaintiff performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district, and her employment was terminated from within this District.

22.     This cause of action arose from or relates to the contacts of Defendants with Florida residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental/pendent jurisdiction over Plaintiff's related state law claim(s).

24.     Venue is proper in this District because Defendants do a sizeable portion of their business in this District, at least one of the Defendants resides and/or has his/her/its principal place of business in this District, and because many of the wrongs herein alleged occurred in this District.

25.     Any/all conditions precedent have been performed by Plaintiff.

26.     Plaintiff retained the undersigned counsel and agreed to pay a reasonable attorneys' fees for all services rendered.

## FLSA COVERAGE

27.     At all times referenced herein, Quest Diagnostics and ExamOne formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had two or more employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

28.     At all times referenced herein, NMS formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had two or more employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

29.     Defendants' performance of laboratory services could not and was not accomplished without the use of syringes, iPads, adhesive bandages, phlebotomy tubes, urine collection cups, labels, and other goods, medical equipment and supplies, diagnostic equipment, computers, telephones, phone systems, and other materials and supplies that traveled in interstate commerce in order to engage in interstate commerce.

30.     At all times referenced herein, Defendants jointly employed Plaintiff.

31.     At all times material to the Complaint, Plaintiff participated in the actual movement of things in interstate commerce by regularly using instrumentalities of interstate commerce in her work, including syringes, iPads, adhesive bandages, phlebotomy tubes, urine collection cups, labels, and other goods, medical equipment and supplies.

## STATEMENT OF FACTS

### Background Facts Regarding The Relationship Between NMS, Quest Diagnostics, and ExamOne.

32.     ExamOne is a leading provider of risk assessment testing for life insurance companies.

33.     ExamOne holds itself out to the public as "A Quest Diagnostic Company" and includes this statement in its commercial branding and/or logo.

34.     NMS is a drug-testing company that identifies itself as an "ExamOne affiliate."

35.     NMS's principal place of business is 2901 South Congress Avenue, Palm Springs, Florida 33461.

36.     According to ExamOne's webpage, available at https://www.examone.com/locations/ ExamOne's location in Palm Springs, Florida is 2901 South Congress Avenue – the same address as NMS' principal office.

37.     NMS identifies itself as "ExamOne Branch No. 796."

6

38.     As an ExamOne affiliate, NMS provides "Paramedical Exam Services" to insurance companies using "Mobile Examiners" such as Plaintiff.

**Plaintiff's Employment With Defendants**

39.     Plaintiff is a former Mobile Examiner for Defendants.

40.     Plaintiff first began working for Defendants in or around 2007.

41.     During the entire period of her employment by Defendants, Plaintiff's duties included going to private appointments for clients who need tests or physical exams for insurance underwriting purposes and carrying out tasks designated by Defendants.

42.     These appointments typically took place at clients' private homes or offices.

43.     The exams included tasks such as asking questions about client health, taking height and weight measurements, and taking blood and urine samples.

44.     Plaintiff's schedule of appointments was provided by Defendants. Plaintiff provided her hours of availability to Defendants in advance using the ExamOne portal website, and Defendants populated her schedule with appointments.

45.     Plaintiff's work was assigned out of Defendants' Palm Springs office.

46.     Plaintiff's service territory consisted of locations throughout the Southeast Florida area.

47.     Plaintiff was required to travel to and from appointments, and typically drove to do so.

48.     Plaintiff was not reimbursed or compensated for her travel expenses while performing work for Defendants.

49.     Defendants' failure to adequately reimburse Plaintiff for her automobile and cellular phone expenses constitutes a "kickback" to Defendants, such that the wage that Defendants paid to her were not paid free and clear of all outstanding obligations to Defendants.

50.     Between travel and appointments, Plaintiff typically worked for the entire workday with very little downtime.

51.     In addition to her client exams, Plaintiff was also responsible for completing paperwork and conducting lab work at home.

52.     This lab work included putting blood samples collected from clients through a centrifuge.

53.     This paperwork and lab work was a required part of the job.

54.     This additional work typically took approximately four to six hours to complete.

### Defendants' Compensation Practices.

55.     During the entire period of her employment by Defendants, Plaintiff was only paid a fixed ("piece") rate per appointment.

56.     Defendants determined the rate Plaintiff was paid for each appointment in their sole discretion.

57.     Plaintiff was unable to negotiate her pay rate.

58.     Plaintiff frequently worked over 40 hours in a week but was not paid overtime.

59.     Plaintiff was frequently paid less than the minimum wage.

60.     For example, in the two-week period from February 16, 2017 to February 28, 2017, Plaintiff worked 144 hours but was paid only $567.67, or approximately $3.94/hour.

61.     Defendants did not pay Plaintiff for travel she completed after she had begun working for the day.

62.     Defendants did not pay Plaintiff for her travel time between appointments.

63.     Defendants did not pay Plaintiff for travel completed prior to Plaintiff's workday coming to an end.

64.     Defendants did not pay Plaintiff for the work she performed at home.

65.     Plaintiff's travel expenses were not reimbursed.

66.     Plaintiff's printing and other office expenses were not reimbursed.

67.     When these expenses are taken into account, Plaintiff's effective "regular rate" of pay was even further below the minimum wage.

### Defendants Misled Plaintiff To Believe She Was Independent Contractor In Order To Avoid Paying Plaintiff Lawful Wages.

68.     At all times referenced herein, Defendants (mis)represented to Plaintiff that she was an "independent contractor" and not an employee.

69.     During her employment with Defendants, Defendants required Plaintiff to enter into an "Independent Technician Contract" with NMS Management Services/ExamOne World Wide, Inc/Portamedic, shortened to "NMS" for purposes of that agreement.

70.     Defendants are believed to have entered into the same "Independent Technician Contract" with their other current and former Mobile Examiners.

71.     During her employment with Defendants, Plaintiff also entered into a "Confidentiality and Non-Disclosure Acknowledgment" with NMS, in which NMS identified itself as an "ExamOne Office."

72.     Defendants are believed to have entered into the same "Confidentiality and Non-Disclosure Acknowledgment" with their other current and former Mobile Examiners.

73.     Despite Defendants' characterization of Plaintiff's relationship with Defendants as an "independent contractor," in reality, Plaintiff and the other Mobile Examiners were really employees of Defendants, considering the following:

      a.     The work Plaintiff and the other Mobile Examiners performed for Defendants was an integral part of the Defendants' business. Defendants contracted with insurance

companies specifically to provide the services performed by Plaintiff, and they could not have provided their testing services without using Mobile Examiners.

b.      Plaintiff's employment was not temporary and had no fixed end-date. Plaintiff worked for Defendants continuously for nearly ten years.

c.      At all times referenced herein, Plaintiff and Defendants' other and the other Mobile Examiners were required to follow the same rules, policies, and procedures established solely by Defendants. For example, on October 21, 2013, NMS issued a notice in which NMS stated that "the following SOP's (standard operating procedures) must be adhered to in order for you to continue receiving cases from us." See Exhibit A.

d.      Defendants provided Plaintiff and the other Mobile Examiners with a manual and other written policies directing how certain task were to be performed.

e.      Defendants required Plaintiff and the other Mobile Examiners to participate in unpaid training where they would be taught and/or refreshed on Defendants' policies and procedures for completing their job duties.

f.      Defendants required Plaintiff and the other Mobile Examiners to adhere to their established dress code. The ExamOne/Quest Diagnostics Standards and Protocols Manual for Insurance Examination Services provided as follows:

> Applicants expect you to dress in a business-like, professional manner when performing services. This includes wearing a neat and clean lab jacket, medical uniform or business casual dress along with appropriate, closed toe shoes. Examples of clothing that would not meet these standards are tank tops, dresses, jeans, skirts, shorts, flip flops, etc.

g.      Defendants' policies also prohibited Plaintiff f and the other Mobile Examiners rom having visible tattoos or piercings, aside from conservative ear piercings.

h.      Defendants required Plaintiff and the other Mobile Examiners to wear a nametag that contained the logo and name of NMS and the logo for ExamOne, "ExamOne a Quest Diagnostics Company" when was performing/completing exams.

i.      Defendants required that Plaintiff and the other Mobile Examiners regularly complete "Contractor Competency Checklists".

j.      Defendants reviewed and graded Plaintiff's and the other Mobile Examiners' performance on a weekly basis.

k.      Defendants required Plaintiff and the other Mobile Examiners to input their availability to work on a monthly basis using "schedule now" software through the ExamOne website; Defendants would then populate Plaintiff's and the other Mobile Examiners' schedules with preset appointments.

l.      Plaintiff and the other Mobile Examiners received their assignments through the ExamOne Portal.

m.      Neither Plaintiff nor the other Mobile Examiners were free to reject assignments once they were made.

n.      Plaintiff and the other Mobile Examiners was required to record the time they spent on appointments using the ExamOne portal; they would "clock-in" when they began an appointment and "clock out" when finishing an appointment.

o.      Plaintiff and the other Mobile Examiners was treated by Defendants as at-will employees.

p.      ExamOne supervised the work, collecting the insurance forms completed on behalf of applicants, reviewing them and informing Plaintiff and the other Mobile Examiners of any errors.

q.     NMS would impose monetary fines on Plaintiff and the other Mobile Examiners for errors in the work identified by ExamOne, further reducing the regular rate of pay below the minimum wage.

r.     Neither Plaintiff nor the other Mobile Examiners was required to use managerial skills to realize a profit or a loss but all were instead paid a fixed rate per appointment as determined solely by Defendants.

s.     Neither Plaintiff nor the other Mobile Examiners exercised managerial decision-making or independent business judgment in performing their job duties as Mobile Examiners.

t.     Plaintiff and the other Mobile Examiners were economically dependent on Defendants and did not invest their own money, equipment, or supplies into Defendants' business.

u.     Defendants provided and the other Mobile Examiners with the equipment to do the job, such as EKG machines, iPads, blood collection kits, and centrifuges.

v.     Neither Plaintiff nor the other Mobile Examiners were conducting their own businesses while in the employ of Defendants.

w.     Neither Plaintiff nor the other Mobile Examiners exercised a significant degree of control over the work. Although Plaintiff and the other Mobile Examiners designated their hours of availability, there appointments within those hours (who, when, and where), were determined entirely by Defendants.

74.   Defendants could terminate Mobile Examiners like Plaintiff by deciding not to use them on any further assignments.

75.   Plaintiff and the other Mobile Examiners were not required to record their travel time.

76.     Plaintiff and the other Mobile Examiners were not required to record time spent performing prep-work before an appointment.

77.     Plaintiff and the other Mobile Examiners were not required to record the time spent performing work at home.

### Plaintiff Joins A Collective Action Against ExamOne and Quest In The Southern District Of New York In March of 2017 And Withdraws From That Litigation On December 10, 2018

78.     On June 29, 2016, a complaint was filed in the United States District Court for the Southern District of New York, No. 1:16-cv-05165-ER-KNF, *Vecchio v. Quest Diagnostics, Inc., et al*. This is an action under the FLSA for recovery of minimum wage and overtime payments for medical examiners employed by Quest and ExamOne nationwide. This lawsuit is still on going.

79.     On October 25, 2016, Plaintiff joined the *Vecchio* litigation as a plaintiff and filed an executed consent to sue form under 29 U.S.C. § 216(b), *see* Exhibit B, effectively tolling her statute of limitations back to October 25, 2013, or back to October 25, 2014 upon a finding of a willful violation of the FLSA by Defendants.

80.     Shortly after joining the *Vecchio* litigation, Plaintiff began to reach out to other Mobile Examiners at NMS to make them aware of the lawsuit.

81.     As a result of Plaintiff's efforts, three other NMS Mobile Examiners joined the *Vecchio* litigation in or around February of 2017.

82.     Plaintiff withdrew from the *Vecchio* litigation on or about December 10, 2018, resuming the limitations period for all claims she had for minimum and/or overtime wages under the FLSA against ExamOne and Quest.

83.     NMS is not a party to the *Vecchio* litigation.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84.     Plaintiff brings this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all similarly-situated individuals who are part of the following class:

> All persons who were by employed by or engaged by NMS Management Services, Inc.,  ExamOne World Wide, Inc., ExamOne LLC, and Quest Diagnostics Inc., or who were otherwise employed or engaged by ExamOne World Wide, Inc., ExamOne LLC, and Quest Diagnostics Inc. *through* NMS Management Services, Inc., in the position of "Mobile Examiner," "Mobile Phlebotomist," "Paramedical Examiners" and/or in any substantially similar position, who were paid on a per appointment basis, at any time during the three years prior and up through the filing of this Complaint.

These individuals are referred to as the "FLSA Class", the "Collective", or "FLSA Class Members."

85.     Plaintiff's proposed collective action differs from the existing collective action pending in *Vecchio* because Plaintiff's proposed FLSA Class includes only those persons who were employed by ExamOne and Quest *in addition to* being employed by NMS and/or *through* NMS.

86.     None of the remaining *Vecchio* collective action opt-ins were employed or engaged by NMS.

87.     Collective Action treatment of Plaintiff's FLSA claims is appropriate because Plaintiff and the FLSA Class have been subjected to the common business practices referenced in Paragraph 32-77, *supra*, and the success of her claims depends on the resolution of common issues of law and fact, including*, inter alia*, whether Defendants' companywide practices resulted in their failing to properly compensate the FLSA Class Members for all hours worked.

## COUNT I: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA
## (29 U.S.C. § 206)

Plaintiff restates each and every prior paragraph of this Complaint, as if fully restated herein, and further alleges as follows:

88.     Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages.

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

89.     At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff and the Collective the federal minimum wages required by the FLSA, in amounts to be proven at trial.

90.     Defendants either recklessly failed to investigate whether their failure to pay Plaintiff and the Collective at least a minimum wage for all of the hours worked during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Plaintiff and the Collective to believe that Defendants were not required to pay them at least a minimum wage, and/or Defendants concocted a scheme pursuant to which they deprived Plaintiff and the Collective the minimum wage pay earned.

91.     At all times relevant to this Complaint, the Defendants have been and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

92.     At all times relevant to this Complaint, Defendants jointly employed Plaintiff and the Collective within the definition of the FLSA 29 U.S.C. § 203(e)(1).

93.     Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as Exhibit C.

94.     At all times relevant to this Complaint, Defendants have been and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

95.     At all times relevant to this Complaint, Defendants employed and continue to employ Plaintiff and the Collective, within the definition of the FLSA 29 U.S.C. § 203(e)(1).

96.     At all times relevant to this Complaint, Defendants formed an enterprise "engaged in commerce" as defined in 29 U.S.C. § 203(s)(1)(A)(ii), because they had gross operating

revenues in excess of $500,000.00.

97.      Defendants have failed to make, keep, and preserve records with respect to Plaintiff and the Collective sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ *201 et. seq.*, including 29 U.S.C. § 211(c) and § 215(a).

98.      Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

99.      Plaintiff requests recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE Plaintiff, Brandi Yip, for herself and the Collective, respectfully request relief against Defendants, jointly and severally, as set forth below:

a.      Designating this action as a collective action on behalf of Plaintiff and the Collective she represents pursuant to the Fair Labor Standards Act claims, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue/join forms pursuant to 29 U.S.C. § 216(b);

b.      Designating Plaintiff BRANDI YIP as the representative for the Collective;

c.      Designating the undersigned as counsel for the Collective;

d.      Awarding Plaintiff and the Collective unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

e.      Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff and Class members in an amount to be determined at trial;

f.      Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*;

g. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

h. Awarding pre-judgment and post-judgment interest as provided by law;

i. Awarding reasonable attorneys' fees and costs; and

j. Awarding such other and further relief that this Court deems appropriate.

## COUNT II: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207)

Plaintiff restates paragraphs 1 through and including 87 of this Complaint, as if it fully restated herein, and further alleges as follows:

100. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

101. Plaintiff is not exempt from the right to receive overtime pay under the FLSA.

102. Plaintiff is entitled to be paid overtime compensation for all overtime hours worked.

103. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay overtime to its employees for their hours worked in excess of 40 hours per week.

104. As a result of Defendants' failure to properly compensate their employees, including Plaintiff, at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week, Defendants violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et. seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

105. Plaintiff and the Collective are entitled to damages in the amount of their unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her

attorneys' fees and costs.

106.    At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff and the Collective overtime wages (of time and one-half of at least the applicable Florida minimum wage), as required by the FLSA, in amounts to be proven at trial.

107.    Defendants either recklessly failed to investigate whether their failure to pay Plaintiff and the Collective an overtime wage (of time and one-half of at least the applicable Florida minimum wage) for all of the overtime hours worked during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Plaintiff and the Collective to believe that Defendants were not required to her overtime wages, and/or Defendants concocted a scheme pursuant to which they deprived Plaintiff and the Collective of the overtime pay earned.

108.    At all times relevant to this Complaint, Defendants have been and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

109.    At all times relevant to this Complaint, Defendants employed and continue to employ Plaintiff and the Collective, within the definition of the FLSA 29 U.S.C. § 203(e)(1).

110.    At all times relevant to this Complaint, Defendants comprised and enterprise "engaged in commerce" as defined in 29 U.S.C. § 203(s)(1)(A)(ii), because they had gross operating revenues in excess of $500,000.00.

111.    Defendants have failed to make, keep, and preserve records with respect to Plaintiff and the Collective sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*, including 29 U.S.C. § 211(c) and § 215(a).

112.    Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within

the meaning of 29 U.S.C. § 255(a).

113.    Plaintiff requests recovery of her attorney's fees and costs associated with this cause as

provided by 29 U.S.C. § 216(b)

## REQUEST FOR RELIEF

WHEREFORE Plaintiff, Brandi Yip, for herself and the Collective, respectfully requests

relief against Defendants, jointly and severally, as set forth below:

a.   Designating this action as a collective action on behalf of Plaintiff and the Collective she represents pursuant to the Fair Labor Standards Act claims, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue/join forms pursuant to 29 U.S.C. § 216(b);

b.   Designating Plaintiff BRANDI YIP as the representative for the Collective;

c.   Designating the undersigned as counsel for the Collective;

d.   Awarding Plaintiff and the Collective unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

e.   Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff and Class members in an amount to be determined at trial;

f.   Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*.;

g.   Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

h.   Awarding pre-judgment and post-judgment interest as provided by law;

i.   Awarding reasonable attorneys' fees and costs; and

j.   Awarding such other and further relief that this Court deems appropriate.

## COUNT III: VIOLATION OF 29 U.S.C. § 215(A)(3)-RETALIATORY DISCHARGE

Plaintiff restates paragraphs 1 through and including 83 of this Complaint, as if fully restated herein, and further alleges as follows:

114.   Plaintiff had an exemplary employment history with Defendants.

115.   Prior to joining the *Vecchio* litigation, Defendants typically booked Plaintiff's calendar a month out with appointments.

116.   Defendants then retaliated against Plaintiff by dramatically reducing the number of appointments she received as a direct and proximate result of her joining the *Vecchio* litigation as an opt-in Plaintiff and/or her asking other NMS Mobile Examiners to join the *Vecchio* case.

117.   Shortly after Plaintiff opted-in to the *Vecchio* litigation, the assignments she received dropped significantly.

118.   Shortly after Plaintiff opted-in to the *Vecchio* litigation, Defendants deliberately began to assign her more difficult assignments, including assigning Plaintiff applicants/clients with lengthy medical histories and/or significant health problems, requiring her appoinments to take longer to complete, and resulting in a lower regular rate of pay due to her being paid on a "piece rate" basis. This practice by Defendants further resulted in Plaintiff being unable to complete as many assignments and caused some assignments to be cancelled, resulting in the further loss of income by Plaintiff.

119.   When Plaintiff questioned why the number of assignments she was receiving had dropped, Defendants told her that work was "slow."

120.   Defendants' purported reason for reducing the work provided to Plaintiff was untrue and a pretext intended to conceal Defendants' retaliation against Plaintiff for joining the *Vecchio* litigation.

121.    In or about April of 2017, Plaintiff noticed that her appointments stopped appearing on her calendar after the first week of May of 2017, which was unusual.

122.    On or about May 9, 2017, Taule called Plaintiff and left her a voicemail to call Taule back.

123.    Plaintiff called Taule back shortly after receiving her voicemail and spoke with Taule. During this conversation, Taule informed Plaintiff that she would be receiving no further work from Defendants and that NMS had decided "to go in a different direction," terminating Plaintiff's employment.

124.    Upon information and belief, Defendants hired and/or engaged another Mobile Examiner named Utethia Johnson approximately one week before Plaintiff was terminated.

125.    When Plaintiff questioned Taule's stated reason for her termination in light of Defendant's recent hire, Taule responded by stating that she had not said there was no work; just that there was no work available for Plaintiff.

126.    In the weeks and months following Plaintiff's termination, NMS continued to seek applicants for and to hire and/or engage persons to work for Defendants as Mobile Examiners and/or as Mobile Phlebotomist.

127.    Subsequent to Plaintiff's termination, NMS recruited persons to work as Mobile Examiners and/or as Mobile Phlebotomist through Facebook.com, Linkedin.com, Indeed.com, and other hiring platforms. Several examples of these job posting are attached as Exhibit D.

128.    NMS continues to seek applicants for and to hire and/or engage persons to work for Defendants as Mobile Examiners and/or as Mobile Phlebotomist to this very day, hiring their last mobile examiner approximately 4 months ago.

129.    Despite Defendants' ongoing efforts to hire persons for the Mobile Examiner and/or as Mobile Phlebotomist position, Defendant has never contacted Plaintiff to reinstate her employment or to rehire her.

130.    Upon information and belief, during May of 2017, Defendants selectively terminated and/or stopped providing assignments to at least three other Mobile Examiners who had opted-in to the *Vecchio* litigation.

131.    Defendants' stated reason for terminating Plaintiff was a pretext or cover-up for unlawful retaliation in violation of the FLSA.

132.    Defendant stopped providing any assignments to Plaintiff in May of 2017, effectively terminating her employment.

133.    29 U.S.C. § 215(a)(3) makes it unlawful for an employer to retaliate against an employee who seeks to enforce her rights under the FLSA.

134.    Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by taking adverse actions against Plaintiff because she joined the *Vecchio* litigation.

135.    By reason of the foregoing acts of Defendants, Plaintiff has suffered damages, including lost income, benefits, and employer contributions. Plaintiff is entitled to recover liquidated damages pursuant to the Fair Labor Standards Act.

136.    Plaintiffs request recovery of their attorney's fees and costs associated with this cause of action as provided by 29 U.S.C. § 216(b).

### **REQUEST FOR RELIEF**

WHEREFORE Plaintiff, Brandi Yip, respectfully request relief against Defendants, jointly and severally, as set forth below:

a. Awarding Plaintiff compensatory and monetary damages against Defendants to compensate Plaintiff for lost wages, unpaid wages, other consequential damages, and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

b. Awarding Plaintiff damages for the mental anguish and distress caused by Defendants' retaliatory conduct;

c. Awarding Plaintiff reasonable attorneys fees, costs, and expenses pursuant to the FLSA;

d. Awarding Plaintiff all interest, costs, and expenses pursuant to the FLSA; and

e. Awarding such other and further relief that this Court deems appropriate.

## COUNT IV – VIOLATION OF THE FLORIDA WHISTLEBLOWER ACT

Plaintiff restates paragraphs 1 through and including 83 of this Complaint, as if fully restated herein, and further alleges as follows:

137.   Prior to joining the *Vecchio* litigation, Defendants typically booked Plaintiff's calendar a month out with appointments.

138.   Defendants then retaliated against Plaintiff by dramatically reducing the number of appointments she received as a direct and proximate result of her joining the *Vecchio* litigation as an opt-in Plaintiff.

139.   Shortly after Plaintiff opted-in to the *Vecchio* litigation, the assignments she received dropped significantly.

140.   Shortly after Plaintiff opted-in to the *Vecchio* litigation, Defendants began to deliberately assign her more difficult assignments, to include giving Plaintiff applicants with lengthy medical histories and/or significant health problems, that took longer to complete. This resulted in

Plaintiff being unable to complete as many assignments and it caused some assignments to be cancelled, resulting in the further loss of income for Plaintiff.

141.    When Plaintiff questioned why the number of assignments she was receiving had dropped, she was told by Defendants that work was "slow."

142.    Defendants' purported reason for reducing the work provided to Plaintiff was untrue and a pretext intended to conceal Defendant's retaliation against Plaintiff for joining the *Vecchio* litigation.

143.    In or about April of 2017, Plaintiff noticed that her appointments stopped appearing on her calendar after the first week of May of 2017, which was unusual.

144.    On or about May 9, 2017, Taule called Plaintiff and left her a voicemail to call Taule back.

145.    Plaintiff called Taule back shortly after receiving her voicemail and spoke with Taule. During this conversation, Taule informed Plaintiff that she would be receiving no further work from Defendants and that NMS had decided "to go in a different direction," terminating Plaintiff's employment.

146.    Upon information and belief, Defendants hired and/or engaged another Mobile Examiner named Utethia Johnson approximately one week before Plaintiff was terminated.

147.    When Plaintiff questioned Taule's stated reason for her termination in light of Defendant's recent hire, Taule responded by stating that she had not said there was no work; just that there was no work available for Plaintiff.

148.    In the weeks and months following Plaintiff's termination, NMS continued to seek applicants for and to hire and/or engage persons to work for Defendants as Mobile Examiners and/or as Mobile Phlebotomist.

149.    Subsequent to Plaintiff's termination, NMS recruited persons to work as Mobile Examiners and/or as Mobile Phlebotomist through Facebook.com, Linkedin.com, Indeed.com, and other hiring platforms. Several examples of these job posting are attached as Exhibit C.

150.    NMS continues to seek applicants for and to hire and/or engage persons to work for Defendants as Mobile Examiners and/or as Mobile Phlebotomist to this very day, as evidenced by postings NMS has recently made to websites such as Linkedin.com. *See* Exhibit D.

151.    Despite Defendants' ongoing efforts to hire persons for the Mobile Examiner and/or as Mobile Phlebotomist position, Defendant has never contacted Plaintiff to reinstate her employment or to rehire her.

152.    Upon information and belief, during May of 2017, Defendants selectively terminated and/or stopped providing assignments to at least three other Mobile Examiners who had opted-in to the *Vecchio* litigation.

153.    Defendants' stated reason for terminating Plaintiff was a pretext or cover-up for unlawful retaliation for Plaintiff's joining a lawsuit addressing Defendants' violation(s) of the FLSA.

154.    Plaintiff "perform[ed] services for and under the control and direction of an employer for wages or other remuneration," for Defendants, and so Plaintiff was an employee of Defendants at all times material, as the term employee is defined by Fla. Stat. §448.101(2).

155.    Defendants were at all times material a "private individual, firm, partnership, institution, corporation, or association that employs ten or more persons," and so Defendants were Plaintiff's employer, as the term "employer is defined by Fla. Stat. §448.101(3).

156.    Plaintiff complained about her reasonable and good faith belief that Defendants were violating her FLSA rights when she joined the *Vecchio* litigation.

157.    The FLSA is a "law, rule, or regulation" as the term is defined by Fla. Stat. §448.101(4)

("includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business.")

158.    Plaintiff had an exemplary employment history with Defendants.

159.    Defendants disregarded the law and retaliated against Plaintiff shortly after Plaintiff's complaint about the non-payment of wages and the failure to promptly pay wages.

160.    By initiating adverse employment actions against Plaintiff, Defendants violated the Florida Whistleblower Act.

161.    Plaintiff was damaged and suffered a loss of her wages and other remuneration as a direct and proximate result of Defendants' retaliatory conduct.

WHEREFORE Plaintiff, Brandi Yip, demands the entry of a judgment against Defendants, ExamOne World Wide, Inc., ExamOne LLC, Quest Diagnostics Inc., and NMS Management Services, Inc., jointly and severally, after trial by jury for compensatory damages including her lost wages past and future, lost benefits, and other remuneration, reinstatement to the same or equivalent position, attorneys' fees pursuant to Fla. Stat. §448.103, costs, all interest allowed by law, and for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated this <u>18th</u> day of April, 2019.

        Respectfully submitted,

        <u>s/ Chris P. Wido, Esq.</u>
        Chris P. Wido, *pending pro hac vice admission*
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        chris.wido@spitzlawfirm.com
        *Counsel for Plaintiff*

          *and*

        <u>s/Brian H. Pollock, Esq.</u>
        Brian H. Pollock, Esq.
        Fla. Bar No. 174742
        brian@fairlawattorney.com
        FAIRLAW FIRM
        7300 N. Kendall Drive
        Suite 450
        Miami, FL 33156
        Tel:    305.230.4884
        *Local Counsel for Plaintiff*