**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 9:19-CV-80538-REINHART [CONSENT CASE]

BRANDI YIP, on behalf of herself and all others
similarly situated, and OVETA TRUBOW,

    Plaintiffs,

v.

NMS MANAGEMENT SERVICES, INC.,
EXAMONE WORLD WIDE, INC., and
ELAINE TAULE,

    Defendants.
_____/

**JOINT MOTION FOR SETTLEMENT APPROVAL**
**BETWEEN OPT-IN PLAINTIFFS ECKER AND SAMPSON AND DEFENDANTS**
**AND FOR DISMISSAL WITH PREJUDICE**
**WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Mary Francis "Fran" Ecker and Patricia Sampson (Ecker and Sampson, collectively, "Plaintiffs"), and Defendants ExamOne World Wide, Inc. ("ExamOne"), NMS Management Services, Inc. ("NMS") and Elaine Taule ("Taule") (ExamOne, NMS and Taule, collectively, "Defendants") (Plaintiffs and Defendants, collectively, the "Parties"), have entered into a Confidential Settlement Agreement, Waiver, and General Release (the "Settlement Agreement") to settle all claims arising from the work Plaintiffs performed as Mobile Examiners. The Settlement Agreement settles Plaintiffs' claims for alleged unpaid/underpaid minimum wages under the Fair Labor Standards Act ("FLSA") and their state law claims under the Florida Minimum Wage Act against Defendants, any claims by Plaintiffs against Defendants, and any claims by Defendants against Plaintiffs. The Parties hereby move the Court for approval of their written Settlement Agreement and for dismissal of this action with prejudice. (A copy of the Settlement

1

Agreement is being submitted under seal for the Court's *in camera* review.) In further support hereof, the Parties state as follows:

1. Maria Vecchio sued Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne LLC in the United States District Court for the Southern District of New York, claiming that she and others allegedly similarly situated were misclassified and that as a result, were not paid the minimum wages and overtime pay required by the FLSA. *Vecchio v. Quest Diagnostics, Inc., ExamOne World Wide, Inc., and ExamOne LLC*, S.D. N.Y. Case No.: 16-CV-5165 (the *"Vecchio* Case*")*.

2. The District Court for the Southern District of New York conditionally certified the *Vecchio* Case as a collective action, and following the provision of notice, Brandi Yip and Oveta Trubow filed consents to join that lawsuit.

3. After withdrawing her consent to participate in the *Vecchio* Case, Plaintiff Brandi Yip later filed the instant lawsuit through counsel. [ECF No. 1.]  She asserted unpaid minimum wage and overtime pay claims under the FLSA, a minimum wage claim under the Florida Minimum Wage Act ("FMWA"), as well as retaliation claims under the FLSA and the Florida Whistleblower's Act ("FWA").

4. Shortly thereafter, Oveta Trubow joined the lawsuit, having also withdrawn her consent to participate in the *Vecchio* Case. [ECF No. 5.]

5. Ms. Yip and Ms. Trubow next filed an Amended Complaint in which each sought to assemble a collective action to pursue the FLSA minimum wage and overtime claims, and in which each brought claims for retaliation for themselves pursuant to the FLSA and the FWA. [ECF No. 6.]

6. Defendants denied Plaintiffs' allegations that they were owed any wages, denied the allegations of retaliatory termination as to Ms. Yip and Ms. Trubow, denied that collective treatment of their claims was appropriate, and continue to deny all such allegations.

7. On August 22, 2019, Plaintiffs filed their Third Amended Complaint to include additional claims alleging that Defendants also violated the FMWA. [ECF No. 54.]

8. Defendants responded to the Third Amended Complaint with their Answers and Affirmative Defenses by denying the allegations that they violated Florida or federal law, by contesting the damages claimed, and by asserting a myriad of legal and factual defenses to the claims by Plaintiffs and to any attempted certification of this case as a collective action. [ECF Nos. 57, 58.]

9. After the parties exchanged their disclosures and substantial written discovery, Plaintiff Brandi Yip filed her Motion for Conditional Certification on September 20, 2019. [ECF No. 59.]

10. The parties then participated in a settlement conference with Magistrate Judge David Lee Brannon on October 8, 2019, which ultimately resulted in an impasse. [ECF No. 67.]

11. The parties next completed their briefing for the pending Motion for Conditional Certification, wherein Defendants each separately opposed the certification of any collective action, and in response to which Plaintiffs filed a Reply. [ECF Nos. 75, 76, 81.]

12. After Ms. Trubow joined in these proceedings, Ms. Ecker and Ms. Sampson each joined these proceedings as additional opt-in Plaintiffs. [ECF Nos. 50, 80.]

13. The necessary parties to the federal court action, along with their counsel and/or through their representatives, later attended a mediation with Neil Flaxman, Esq. on January 29, 2020, at which they engaged in extensive settlement negotiations that lasted the entire day. During

the course of the mediation, specific amounts were negotiated and agreed upon for each of the named and opt-in plaintiffs (based in part on the number of weeks of service that each had provided). The parties also negotiated and agreed upon a specific amount of attorneys' fees and costs (and not as a percentage of the plaintiffs' recovery). The parties memorialized all of the agreed upon terms in a written, Mediated Settlement Agreement executed by Ms. Yip, Ms. Trubow, Ms. Taule, and authorized representatives of each corporate Defendant. (A copy of the Mediated Settlement Agreement is being submitted under seal for the Court's *in camera* review.)

14. After signing the Mediated Settlement Agreement, the Court permitted Plaintiffs' counsel to withdraw from representing Ms. Yip and Ms. Trubow for cause following a series of hearings conducted by this Court, but allowed Plaintiffs' counsel to continue in representing Ms. Ecker and Ms. Sampson after Ms. Yip and Ms. Trubow expressly waived any conflict of interest related to that continued representation. [ECF No. 125.]

15. Meanwhile, Plaintiffs' counsel filed with the Court a Notice regarding their asserting a lien over the proceeds of any recovery by Ms. Yip, Ms. Trubow, Ms. Ecker, and/or Ms. Sampson. [ECF No. 119.]

16. Counsel for Ms. Ecker and Ms. Sampson thereafter continued to engage in subsequent, protracted, and extensive additional negotiations with defense counsel in an effort to resolve this matter on behalf of their respective clients.

17. Ultimately, all parties to this case agreed to modify the approval procedure contemplated by the Mediated Settlement Agreement by having this Court determine the reasonableness of their separate settlements and to thereafter dismiss this entire case with prejudice.

18. To avoid the risks and unknowns as well as the costs of protracted litigation, the Parties to this Motion desire to fully and finally resolve this action, and to have the Court dismiss this part of the case with prejudice as to all claims that were and/or could have been raised in this action and/or in the prior federal court action as between Plaintiffs, Ms. Ecker and Ms. Sampson, and Defendants.

19. After a full review of the facts and information, the Parties agree that the negotiated terms of the settlement represent a fair, reasonable and just compromise of disputed issues.

20. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA and other releases. The law favors compromise and settlement of lawsuits. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement").

21. Indeed, the Eleventh Circuit Court of Appeals seems to require that courts approve the resolution of FLSA claims. *See e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (stating that claims for back wages arising under the FLSA may be settled or compromised only with the approval of the Court or the Secretary of Labor).

22. The Court's role is to review the settlement to ensure that it is a fair and reasonable resolution of a bona fide dispute. *See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994) (recognizing that, when determining whether a settlement is fair and reasonable, courts should consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel).

23. Approval is warranted where a settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the [FLSA]," is fair and reasonable, and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353-54 & n.8; *see also Bennett*, 737 F.2d at 987 n.9. This settlement was arrived at after a settlement conference with a U.S. Magistrate Judge and then after a mediation with an experienced and well-respected federal mediator.

24. The Parties and their counsel agree that the settlement is fair, just, reasonable and adequate to settle the claims of Ms. Ecker and Ms. Sampson against Defendants based on the significant disputed issues in this case.

25. The Parties dispute whether any liability exists in the instant action. Nonetheless, they have agreed to settle all claims in this dispute, including the FLSA claims, through the execution of their Settlement Agreement, because the Parties agree that if they had continued to litigate this matter, they would have faced uncertain risk and unavoidable fees and costs to prove their claims and defenses at summary judgment and/or at trial.

26. The District Court for the Southern District of New York recently granted summary judgment to the Defendants in the *Vecchio* Case, dismissing the minimum wage claims brought by Ms. Vecchio, as well as the overtime claims of 32 opt-ins with prejudice, and decertified the collective action on September 18, 2020. *Vecchio v. Quest Diagnostics, Inc.*, 2020 WL 5604080 (S.D.N.Y. Sept. 18, 2020). As such, the results obtained by counsel for Ms. Sampson and Ms. Ecker (and that counsel had previously secured for Mrs. Yip and Mrs. Trubow) are better than the results obtained to date by the 32 claimants in the *Vecchio* Case, and underscore the risk of litigation that Ms. Ecker and Ms. Sampson face in the instant matter.

27. While Ms. Ecker and Ms. Sampson believe the allegations asserted in this action have merit and are supported by the information developed to date, they are experienced and realistic, understand that the resolution of liability and damage issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration, and recognize the expense and delay which would be incurred as the result of the proceedings necessary to prosecute the action against Defendants through trial and appeal. In reaching the resolution, Counsel for Ms. Ecker and Ms. Sampson, took into account the uncertain outcome and risk of any litigation, as further demonstrated by the recent developments in the *Vecchio* Case.

28. The Settlement Agreement confers substantial benefits upon Ms. Ecker and Ms. Sampson, involves the resolution of their claims in this lawsuit, and was reached after in-depth information exchange, a settlement conference with a U.S. Magistrate Judge, a mediation conducted by an experienced mediator, over a year of settlement discussions, and another nine (9) months of subsequent negotiations over the terms of the written Settlement Agreement and manner in which to obtain its approval.

29. The terms of the Settlement Agreement represent a successful resolution of the claims given that a trier of fact might conclude that Plaintiffs are not entitled to any relief if they were properly classified as independent contractors or to award relief in an amount less than the amount agreed to in the Settlement Agreement after considering the pay that Plaintiffs actually received each week as reported on their 1099's and/or W-2's.

30. Ms. Ecker and Ms. Sampson further state that the attorneys' fees and costs to be paid to Plaintiffs' counsel represent a reasonable compromise of the attorneys' fees and costs actually incurred in prosecution of the federal action and this case. Defendants do not oppose

the payment or amount of the fees and costs counsel for Ms. Ecker and Ms. Sampson seek, as set forth in the Settlement Agreement. *See Silva v. Miller,* 307 Fed. Appx. 349, 351 (11th Cir. 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.")

31. Plaintiffs' counsel represent that they took on this case involving the alleged misclassification of employees as independent contractors against a subsidiary of a publicly-traded company, as well as against a local company and its owner, on a contingency basis knowing that Defendant, ExamOne World Wide, Inc., had been vigorously defending the *Vecchio* Case, a similar collective action that had been pending for several years in a federal court in New York. As noted above, the *Vecchio* Case was recently decertified and the minimum wage claims of the named plaintiff, and the overtime claims of 32 opt-in plaintiffs, were dismissed on summary judgment. Plaintiffs' counsel represent that they expended well over $100,000 in attorneys' fees in prosecuting this matter before the Parties signed the Mediated Settlement Agreement, along with thousands of dollars in costs, and that they have expended additional time since January 29, 2020, in attempting to obtain the final consummation of the settlement.

32. Plaintiffs' counsel further represent that the fees and costs are not a percentage of the Plaintiffs' recovery in this case, that the attorneys' fees and costs thus far actually incurred by Plaintiffs' counsel far exceed the amount that will be paid to them under the proposed Settlement Agreement, and that there is no correlation between the amount of money being paid by Defendants to the Plaintiffs and the attorneys' fees and costs being paid by Defendants on Plaintiffs' behalf. *See* 29 U.S.C. § 216(b); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).

33. When considering whether to approve a settlement under the FLSA, the Court should keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977); *see also Hamilton v. Frito-Lay, Inc.*, 2007 WL 219981, *2 (M.D. Fla. Jan. 26, 2007). In other words, a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), *citing Cotton,* 559 F.2d at 1330.

34. Plaintiffs' counsel note that the law on attorneys' fees under the FLSA is as follows: The FLSA contains a mandatory fee-shifting provision which provides that reasonable attorneys' fees and costs ("shall be awarded") to a prevailing plaintiff. 29 U.S.C. §216(b). The federal courts have long recognized the importance of a prevailing plaintiff's right to recover attorneys' fees under the FLSA. *See, e.g., Shelton v. Ervin,* 830 F.2d 182, 183 (11th Cir. 1987) (FLSA's fee recovery provision is not collateral to the merits of an FLSA lawsuit, but rather, is an "integral part of the merits" of the lawsuit). A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

35. As noted above, during the course of the mediation, specific amounts were negotiated and agreed upon for each of the named and opt-in plaintiffs (based in part on the number of weeks of service that each had provided). The parties also negotiated and agreed upon a specific amount of attorneys' fees and costs (and not as a percentage of the plaintiffs' recovery). Further, Defendants do not oppose the payment or amount of the fees and costs counsel for Plaintiffs seek, as set forth in the Settlement Agreement.

36. Plaintiffs' counsel further note that although the FLSA was intended to protect employees, the amount of attorneys' fees awarded in FLSA cases should not be reduced to achieve proportionality with the amount recovered by Plaintiffs in such actions. In *City of Riverside v. Rivera*, the Supreme Court <u>expressly rejected</u> the argument that <u>a fee award should be a proportion of the damages award received by the plaintiff</u>. 477 U.S. 561, 574 (1986). The Supreme Court stated as follows in this regard:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Id.* at 578; *accord Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1493 (11th Cir. 1994). Moreover, since Congress determined that it was important for FLSA rights to be enforced, and that reasonable attorneys' fees must be awarded in order to provide for such enforcement, particularly when the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant, there can be no requirement of proportionality. *See, e.g.*, *Fegley v. Higgins*, 19 F.3d 1126, 1134-45 (6th Cir. 1994) (FLSA fee award "encourages the vindication of congressionally identified policies and rights"); *United Slate, Tile and Composition Roofers v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984) (purpose of FLSA fee award "is to insure effective access to the judicial process"); *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Obviously Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs."); *Shannon v. Saab Training USA, LLC*, 2009 WL 1772808, *3 (M.D. Fla. June 23, 2009) ("To encourage private enforcement of statutory rights under the FLSA, Congress created a fee-shifting provision").

37. Thus, Plaintiffs' counsel point is that it is not uncommon for attorney fee awards to exceed the amount recovered by plaintiffs in FLSA and Florida wages cases – particularly for low-wage workers – when considering the disparity between counsel's rates and those typically earned by the plaintiffs/employees.[1] If the attorneys' fees had to be proportionate to the amount recovered by plaintiffs in FLSA cases, then there would be little incentive for counsel to undertake representation on behalf of those who were victims of wage theft – but who stood only to recover minimal amounts.

38. The Settlement Agreement between Plaintiffs and Defendants that is being submitted for the Court's review under seal largely embodies the same terms and conditions as initially identified in the Mediated Settlement Agreement, except for the approval process to now be conducted in this Court instead of in a Florida state court, and except for the submission of two separate settlement agreements.

39. The approval process originally contemplated by the Mediated Settlement Agreement was specifically requested by Defendant ExamOne World Wide, Inc. in order to preserve the confidentiality of the terms of the parties' settlement, and not for any nefarious reason.

30.. Accordingly, the Parties respectfully request that the Court determine that the settlement they reached represents a fair and reasonable compromise, approve the same, and dismiss these Plaintiffs' claims with prejudice upon the condition that it retain jurisdiction for 90 days to enforce the Parties' Settlement Agreement.

---

[1] This principle has been applied in many cases in the FLSA context. *See, e.g.*, *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Roebuck & Co.*, Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *24 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs.*, Case No. 6:04-cv-399-Orl.-KRS, 2005 WL 2465022, *11-12 (M.D. Fla. Oct. 6, 2005) ("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time").

**WHEREFORE** Plaintiffs Mary Francis "Fran" Ecker and Patricia Sampson, and Defendants ExamOne World Wide, Inc., NMS Management Services, Inc., and Elaine Taule respectfully request that the Court enter an Order approving the Settlement Agreement as fair and reasonable and dismissing these Plaintiffs' claims with prejudice, upon the condition that the Court retain jurisdiction for a period of 90 days to enforce the Parties' Settlement Agreement.

Dated: November 9, 2020

Respectfully submitted,

*/s/Chris P. Wido*
Chris P. Wido, Esq., admitted pro hac vice
 Email: chris.wido@spitzlawfirm.com
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Tel: (216) 291-4744

*Counsel for Plaintiffs Fran Ecker and Patricia Sampson*

*/s/Brian H. Pollock*
Brian H. Pollock, Esq.
 Fla. Bar No. 174742
 Email: brian@fairlawattorney.com
FAIRLAW FIRM
7300 N. Kendall Drive, Suite 450
Miami, FL 33156
Tel: 305.230.4884

*Local Counsel for Plaintiffs Fran Ecker and Patricia Sampson*

MORGAN, LEWIS & BOCKIUS LLP
*By:/s/ Mark E. Zelek*
Mark E. Zelek
 Fla. Bar No.: 667773
 Email: mark.zelek@morganlewis.com
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131-2339
Tel: 305.415.3000

*Counsel for Defendant
ExamOne World Wide, Inc.*

*/s/Adi Amit*
Adi Amit, Esq.
ADI AMIT P.A.
101 N.E. Third Ave, Suite 300
Ft. Lauderdale, FL 33301
adi@defenderofbusiness.com

*Counsel for Defendants NMS Management Services, Inc. and Elaine Taule*

12